Good morning, your honors. Elizabeth Richardson-Royer on behalf of James Hardy, who has family present in the audience. I plan to reserve three minutes for rebuttal. Now the prosecutor told the jury that James Hardy held the knife in his hand and plunged it into the bodies of the victims more than 65 times. The jury agreed. As it turned out, the killer wasn't James Hardy, but was instead a key prosecution witness during Mr. Hardy's trial. And now 35 years later, everyone agrees about two things. First, that Mr. Hardy's trial lawyer performed efficiently when he failed to present evidence that it was Calvin Boyd who stabbed these victims to death. And second, that had the lawyer presented such evidence, Mr. Hardy would likely not have been convicted as the actual killer. And so what the parties disagree about. Where's that agreement? The second agreement? I thought that was the issue in this case. The issue in this case is not whether there's a reasonable likelihood that Mr. Hardy would have been convicted as the actual killer. The California Supreme Court found that he likely would not have been. The respondent has never contested that finding. I misunderstood you. Go ahead. And so that issue is not before this court. What is before the court is the likelihood that the jury would still have convicted Mr. Hardy on a derivative theory of liability. Okay. So the California Supreme Court is the last reason decision, correct? On the ineffective assistance of counsel claim. Well, and this is habeas. Yes. And we're under AEDPA. Correct. So that's the decision that we're reviewing. With respect to the ineffective assistance of counsel claim. Okay. And tell me, does Ayala have any effect on this? No, Your Honor. And why is that? So what Ayala did was say, you know, regardless of how the state court deals with the question of harmlessness, essentially, the federal court still has to defer to that finding unless it is contrary to or an unreasonable application of clearly established federal law. So it's entitled to, the state's finding is entitled to some deference on the issue of whether it's prejudicial or harmless, right? That would be true except that Mr. Hardy has satisfied 28 U.S.C. Section 2254D in several ways. What are you trying to say? This isn't an actual innocence case. No, Your Honor. Okay. But the state court's decision is only entitled to deference if the petitioner cannot satisfy either 2254D1 or D2. And in this case, Mr. Hardy has satisfied both. And perhaps the easiest way for this 2254D satisfied and applied de novo review is the fact that the state court, in making its decision, made several unreasonable determinations of fact that were critical to its analysis. All right. You're not really, though, challenging any of the factual findings, though. We are challenging the... Because we're stuck with those, the factual findings. We are challenging the facts upon which the state court relied that were flatly contradicted by the record. And those types of facts, if they are part of the state court's analysis, make the state court's decision no longer entitled to deference. And the Supreme Court has held that. This court has held that in numerous cases. So what are those facts? And so the first fact, and perhaps the most important fact, is that the state court twice said that Mr. Hardy was present in Mr. Riley's apartment when Mr. Riley got the go-ahead phone call from Clifford Morgan the night of the murders. And, in fact, that was not true. There was no telephone in Mr. Riley's apartment. There is no evidence that Mr. Hardy was present. All right. Was that a disputed fact? At trial? Well, it's different. If we can't make... You're in a different place than if it was undisputed, right? It was a... It's your theory that he wasn't, but is there some evidence that he was? There is no evidence whatsoever. Is the government going to say that? I would be surprised if the government could point to any evidence that he was there, because... All right. I'm going to ask him that question. So I'm... The evidence actually shows that he was not there. There was no telephone in Mr. Riley's apartment. The evidence shows that when Mr. Riley had to make a phone call, he had to go to a pay phone across the street. Debbie Sportsman, who testified that Riley told her he'd gotten the go-ahead from Morgan, said that she never heard Riley mention or discuss the murders in front of anyone else, and that she would have remembered it had he done so. And there is no evidence to... I guess what I'm trying to... You're saying no evidence. So I know that there were 24 overt acts that were listed in the accusatory instrument, the information or the indictment, whatever, right? Correct. And so is it your position that there was no evidence linking the petitioner to any of those 24 acts? Absolutely not, Your Honor. That's your position? No, that is not my position. Oh, okay. And so this is not a sufficiency of the evidence case. This is not a case where in order to linking him to any of those over acts. It's not a question of whether the jury could have convicted him based on a derivative theory of liability. The question is whether, if the jury had been privy to the overwhelming, compelling, credible evidence that the prosecution's theory was false, that Calvin Boyd was the actual killer, the jury would have been reasonably likely to have a doubt about Mr. Hardy's involvement. That's the standard. And so even if there was no evidence, you're saying that the state court unreasonably applied Strickland? Yes. Okay. But when I look at your brief, it seems to focus heavily on the credibility of certain witnesses, namely Colette Mitchell, the petitioner's girlfriend, and that is problematic for me if you're relying on the credibility of witnesses in that. Mr. Hardy's argument doesn't require a finding of credibility about any witness. And there were certainly severe problems with Ms. Mitchell's testimony as well as the testimony of Calvin Boyd. But even if there weren't, there is enough conflicting evidence that completely undercuts the prosecution's theory and that changes the evidentiary picture. So, but you're arguing unreasonable determination of the facts now, correct? Or is it the law? Which one are you arguing? Both? So right now I'm trying to address the state court's unreasonable application of Strickland. Because what the state court failed to do... But are you presently before this court arguing unreasonable application of the facts? We have... And determination of the facts. We have argued both. But did you argue that below? Yes, Your Honor. And now Mr. Hardy... When did you argue that? Sorry? Where exactly did you argue it? Because did we argue which one? Unreasonable determination of the facts. Mr. Hardy was not represented by counsel in the district court level, but several times throughout his petition and throughout the briefing that came afterward, he said very clearly that the state court's decision was based on unreasonable determinations of fact. And now he didn't specify precisely what those facts were, but he wasn't required to do so. So let me review the facts as I understand them and you can confirm or deny. The defendant filed his state writ in 1991, correct? I'll pull up my timeline here. He filed the initial state habeas petition in 1991. And the, I believe it was the trial court in California made some findings in 1999, eight years later, correct? That's correct. And those findings included, one, that the defendant was not the actual killer. Calvin Boyd was the actual killer. The referee found that the evidence strongly suggested... All right. The referee also found the evidence strongly suggested the defendant could not have been present in the apartment at the time of the murders. That's correct. And finally, that the defense attorney, Mr. Demby, performed efficiently. That's correct. All right. And the Supreme Court reviewed that eight years later in 2007, correct? Correct. All right. And at that point, removed the death sentence after 33 years. Correct. I don't think it had been 33 years by that point. It's just my calculation. 1982 is what I had as the death sentence. Maybe I calculated incorrectly. Math isn't my strong point. But what I want to focus is the second requirement of Strickland. What is that requirement? The requirement is that but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. And what did the Supreme Court find? And the Supreme Court found that had Mr. Hardy been tried solely as the actual killer, there would have been prejudice. But the Supreme Court incorrectly found that there was no reasonable likelihood that the jury would have reached a different result because it would have convicted him on derivative theories of liability. Was that the theory that the prosecutor put to the jury when he was tried in the early 1980s? Absolutely not. All right. And so is it your point that the Washington, excuse me, the California Supreme Court used a standard different than what Strickland identified? That's correct, Your Honor. Did the Supreme Court use a substantial evidence standard? That is correct, Your Honor. Is substantial evidence something that Strickland asked us to look at when we're evaluating the deficient performance of a trial attorney? Strickland asks the court to look at the strength of the evidence. But what the state court did was find that because there was substantial evidence, that was enough. And that precluded the finding of Strickland prejudice. And really what Strickland requires the court to do is to look at the evidence that was presented at trial and the new evidence and determine whether there's a reasonable probability of a different result. And the state court completely failed to do that. Who was the principal witness against the defendant at the time of trial? There were, in my mind, there were two key witnesses. Primarily it was Calvin Boyd because he provided the only direct evidence that Mr. Hardy killed these victims. He said, Riley told me that he and Jim did it. And no one else said that. No one else provided anything like that. At the time of the trial in the early 1980s, did anybody suggest that Calvin Boyd did it? The trial counsel's goal to create that impression in the jury. And he simply failed to perform the investigation or to present the evidence that would have allowed the jury to so find. Did he make that argument to the jury? He argued that there were other potential perpetrators. Thank you. I think I'll reserve the remainder of my time for rebuttal. Thank you. Good morning. Colleen Tiedemann for Respondent. The State Supreme Court reasonably concluded in this case that Petitioner was not prejudiced by his attorney's failure to uncover and expose facts that Calvin Boyd was probably the person who committed the murders in this case. Why is that reasonable when Calvin Boyd, the principal witness against the defendant, was in fact the killer? Because nothing that came out of the reference hearing undermined the testimony of Collette Mitchell that Petitioner was guilty as an aider and abetter in this crime. There is substantial and compelling evidence of his involvement in these murders as an aider and abetter and a co-conspirator. Was aiding and abetting the theory of liability or the theory of criminal responsibility that the prosecutor put to the jury during the criminal trial? Absolutely. And that was found by the State Supreme Court and by the District Court, found that both theories of liability... Have you read the closing argument? Because I did. I read portions of the closing argument. Was the jury instructed on aiding and abetting? Absolutely. The jury was thoroughly instructed on aiding and abetting and conspiracy. And again, the State Supreme Court and the United States District Court below found that these theories were argued to the jury and the jury was thoroughly instructed on these theories of liability. And there is compelling evidence of this defendant's involvement in this case. Let me ask you this, because I was your counsel for the appellant. I was asking her some of the questions. She said that Ayala doesn't have any application here. Does it or doesn't it? Well, in terms of the adepa deference, yes. I mean, the Petitioner is entitled... I'm sorry, the respondent is entitled to the adepa deference standard. Well, okay. But when you apply Strickland, you're making a prejudice analysis, correct? Correct. All right. The court... So I'm wondering, I'm trying to establish here, I think counsel for appellant is saying that she's both claiming an unreasonable determination of the facts, but also of the law. Strickland is the correct law here. So is this more a determination of the law or a determination of the facts? What... Well, Petitioner argues both. And I would submit that the State Supreme Court and the District Court correctly determined the facts and correctly determined the law in this case. Strickland was properly applied by the State Supreme Court. The court did not impose an improper standard or an improper legal argument regarding a... I forgot the exact language of it was, but a... Well, if Yala deals with deference to a finding of harmless error, is that... Does it have some application here when you're assessing prejudice? Well, yes, because we do... The State is entitled to that double deference with regard to the prejudice prong of Strickland. And again, I mean, going back to the evidence that was raised at trial and that was presented to the jury, Petitioner was involved in this crime from the very beginning, both before, during, and after these murders of this mother and the son. He told his girlfriend he was going to commit this crime to collect some insurance money from someone, that he was going to steal something from the house to make it look like a robbery. He told her he had purchased bolt cutters that were going to be used to gain entrance into the home, which were in fact used to gain an entry into the home. And that's not something that the police made public to the jury... Made public. Girlfriend changed her story from the pre-trial to the trial, did she not? She did. In fairly significant ways. She did. Was that pointed out to the jury at the time? Absolutely. Did the jury or some members of the jury express some frustration and find her not to be credible? If they did, they ultimately reached a verdict that he was guilty in this case based on the evidence that was submitted. Her credibility was... But they never heard the evidence that was ultimately found by the trial court and the California Supreme Court that Mr. Boyd, the principal witness against the defendant, was in fact the killer. That is correct, but none of the evidence that came out at the reference hearing under Minor disputed her testimony that he was involved as an aider and abetter in this case. How did he aid and abet if he wasn't the actual killer and wasn't in the apartment? For one thing, he, before the murders, he purchased, told his girlfriend he purchased the bolt cutters that were used to gain entry in the home on the night of the murders. What if that was a lie, either by the defendant or by the girlfriend? That's something that the jury would be able to consider at the time of the trial. And the credibility of... Assuming he had competent counsel at the time, which we now know he didn't. But the issue that we're limited to right now, the certificate of appealability, is limited to whether his attorney rendered ineffective assistance with regard to uncovering and presenting evidence regarding Boyd, not whether he rendered ineffective assistance by failing to cross-examine Colette Mitchell. Are we to assume he was competent in all other regards except for that one issue? Yes. All right. Can we resolve credibility issues here? No, that's not the place of this court to resolve the credibility of a witness at this time. And that's something that the district court pointed out in its opinion, citing to Lawnberger. It noted, petitioner's attempts to have this court reanalyze Mitchell's testimony and reach a different conclusion is misplaced. That is not the function of the district court in habeas proceedings. So what did the Supreme Court... The Supreme Court looked at that testimony and looked at the evidence in light of Boyd, right? Correct. And the Supreme Court said... And this is at... This is the district court citing the Supreme Court's opinion in Hardy too. The California Supreme Court agreed calling Mitchell's testimony critical evidence against Petitioner and found that it was not undermined by the evidence that Boyd may have been the one to have actually killed the Morgans. See, I find that hard to accept if the jury never considered the fact that we now know to be true that Boyd was the killer and they convicted Mr. Hardy and we say that that was... That's fine. He had a bad counsel, somebody else did the killing, but it's okay. But he was convicted as an aider and a better and a co-conspirator. There was substantial and compelling evidence that both the state Supreme Court and district court found tying him to these murders. He received $1,000 after these murders. What would be the point of his receiving $1,000 from Morgan or the other co-conspirators in this case if he had nothing to do with the murders? He asked his girlfriend to destroy a pair of shoes when he learned that there were footprints found at the crime scene. Again, he admitted that he purchased the bolt cutters that were used to get into the house where this mother and son were murdered, they were stabbed to death. So it's not that there is no evidence of his involvement in this case or that the theory of liability was only that he was the actual person who stabbed these victims. But I guess I'm not expressing my frustration clearly enough. The question is wasn't if there's sufficient evidence to convict under an alternative theory. The question is, is there a reasonable probability that the result would have been different? And the jury could still have evaluated the evidence that you suggest, but include with that the evidence that somebody else was the actual killer. Would the result have been the same? How can you say that? Because as the state Supreme Court found and the district court found, there was substantial evidence of his involvement. But is substantial evidence the Strickland test? The Strickland test is whether the outcome of the trial would have been different but for his attorney's alleged ineffective assistance of counsel. And no, it would not have been. He still would have been found guilty of murder on conspiracy and aiding and abetting theories. And in fact, the state court noted that the jury found him guilty on a separate count of the conspiracy to commit murder for the purposes of obtaining insurance fraud. Well, shouldn't we find out and let the state of California try him again and see if they can convict him on aiding and abetting? He already was convicted on aiding and abetting or conspiracy. But the jury never found out that somebody else was the killer. But the information again that came out, the testimony that came out at the evidentiary hearing regarding Boyd did not dispute any of the other testimony of his involvement, any of the other evidence of his involvement. I think what you need to respond to by virtue of that question would be is if, say, a judge on this panel were to, say, view the Strickland and the prejudice analysis differently in a de novo sense, what would that judge have to find to get to de novo review that would not be allowed under AEDPA? That would be the argument you need to make. That there was an unreasonable determination of the facts in this case, and there were not. Or an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Isn't that the standard? Well, and I guess I'm unclear as to exactly what particular facts you're referring to. The fact that somebody else was the killer. The principal witness against this defendant. The jury didn't know that. We know that now. Right. But again... I think your argument is the Supreme Court knew that. Well, again, yes. So then they make a determination. What is the... What applies here? What applies here is the district court found, correctly found, that the state Supreme Court reasonably determined that the outcome of trial would not have been different had his attorney presented this evidence regarding Boyd's involvement at the trial. And the reason for that... How can anyone really say that who's had any experience with jury trials? If Boyd was in the mix, and there was evidence that he was the killer, how do we know the jury would have convicted Artie as an aider and abetter? I mean, things happen in a trial. The jury never really had the opportunity to determine who the killer was. There's a lot of evidence pointing to Artie. So if Artie had been in the mix, we don't know how it would have all turned out. That's the way it works. Well, sorry, my response to that is that after the evidentiary hearing took place, the state Supreme Court and the district court looked at the evidence, removing all of the testimony that Boyd provided, discrediting everything that Boyd said regarding Artie's involvement as the actual killer in this case, and still found that there was compelling evidence of Boyd's testimony regarding his direct involvement as the murderer in this case. Well, this court, let's say if we were on the Supreme Court, we could definitely have decided that issue differently, right? And that would be a hard rock for you to push uphill. This is Edper review. So I think I understand your argument to say we could make that determination if we were on the Supreme Court, but when we're reviewing the Supreme Court and the district court under Edper and Ayala, we can't do that. That is correct. This court would have to determine that the court's unreasonably applied, strictly in this case. The fact that this court may disagree with the analysis or may disagree with how the court eventually, or how the court ruled, is not enough. You have to find that the court's determination was objectively unreasonable. And in this case, it was not objectively unreasonable. So we're talking, at this point, the state Supreme Court was, that decision I think was written by Werdegar and joined by six other justices, correct? Yes, I believe so. And then the district judge is, so essentially, were eight judges in at this point? Yes. Okay. What was the evidence that Hardy was an aider and abetter? There was substantial evidence. As I said before, he told Colette Mitchell, or Colette Mitchell testified, he said he was going to be collecting some insurance money, he was going to steal something to make it look like a robbery. He told her that the murders had to be completed by a certain date or the insurance policy would lapse. He told her that he bought bolt cutters that were going to be used to cut the security chain to gain entrance in the house. After the murders, he told her at least twice he was at the home on the night of the murders. He told her he used the metal cutters to gain entry into the home, and again, that was something that was not made public, and it was in fact, that's the way the murderers gained entry. He explained to her that the son wasn't supposed to be killed, but because his father was out of town, he was asleep in his mother's bed, so both of them were stabbed to death. And he told her he took something from the house to make it look like a robbery. In addition, he discussed his alibi with her constantly after the murders. He told her what to say at the preliminary. Oh, something that was taken from the house was a carbine or something? Carbine rifle was taken from the house, which he later told Colette Mitchell to have his brother remove from Riley's apartment, but to wear gloves because the item was quote unquote hot. He told her he collected it. She actually saw the thousand dollars that he received after the murders. Was there ever, was that carbine ever recovered? Um, I don't know the answer to that. I believe it was, but I'm not 100% sure, but another key factor was that after Hardy learned that a footprint had been found at the crime scene, he told his girlfriend to remove some boots from his apartment and destroy them, which she did. So all of this evidence is compelling, compelling evidence that he was involved in this murder, and even if he wasn't the actual stabber in this case, he was an aider and abetter and a co-conspirator. What about, I think counsel... Was he charged as an aider and abetter? Yes. He was. Well, you don't actually charge that. It's, it's an instructions given to the jury. Yes. And the jury was given that instruction. Yes. Conspiracy was charged. Conspiracy was charged. I apologize. Yes. I guess what I'm struggling with though is that the prosecutor's argument to the jury was that Mr. Hardy was the actual killer and that's what the jury was asked to consider and the aiding and abetting theory was argued to the jury. Of course, the instruction was offered for all the defendants, but the aiding and abetting theory was argued to the jury as to the other co-defendants, which I believe, I don't have the names in front of me, but was another person that we haven't discussed today. The jury didn't hear an argument from the defense counsel or the prosecutor that somebody else was the actual killer. And so that's what, what I'm struggling with is why can we just jump to an aiding and abetting theory when the jury didn't hear very critical evidence that somebody else was the killer and that was the prosecutor's chief argument, if not the only argument, to the jury when he was tried. And I understand your frustration. And my response is that these theories of liability were presented and were argued and I believe that the argument made... I'm not sure that aiding and abetting was argued to the jury. The instruction was offered, but I don't think that the prosecutor made that argument to the jury as it relates to Mr. Hardy. He did as it relates to the co-defendant, and I'll find his name, Mr. Riley, I think Buck Riley. Yes, Riley was the other co-defendant in this case. My response is that under the ADEPA double deference standard, this court is bound by the state court's determination and the district court reasonably determined that these theories were argued and presented to the jury. Why was that reasonable? That's what we have to decide. I mean, otherwise we have no role here and you're wasting our time. But I think we do have a decision to reach whether or not that decision by the lower courts was or the other courts was reasonable. Why was that reasonable given the facts that both counsel have agreed to as I've laid them out? Why was that reasonable for them to conclude that the jury must have found aiding and abetting even though they didn't hear very critical evidence and aiding and abetting was not argued to the jury against Mr. Hardy? That's what I'm struggling with, and you haven't convinced me that I should stop struggling. Well, my argument is that these theories were argued to the jury. The jury was instructed on these theories, and there was... They argued specifically with reference to Hardy. He was an aider and abetter. The prosecutor argued both theories of liability, direct liability and conspiracy in aiding and abetting. And again, those instructions... The jury was instructed with those theories of liability. What is your answer to my question? Can you please repeat the question? Were the theories argued to the jury? Yes, they were. Specifically concerning Hardy. Yes, they were argued to the jury. Well, I think... Are you saying the argues... They had... The jury had those available. The prosecutor seemed to primarily argue that... The prosecutor seemed to think that he was the actual stabber. But those instructions were given by the jury, and the prosecutor, in arguing everything that Hardy did, covered all the facts that you're stating. But seemed to have... So then the question... And the state court knew that the prosecution's theory had been somewhat different, even though they had all these theories out there. Yes. But argument is not evidence in a case. That is correct. Argument is not evidence. It's up to the jury. The court tells the jury the law. These are... This is what the law is. You are the judge of the credibility of the witnesses and the facts, and that's... Correct. And I want to point out, as I said before, even if we were to take the aiding and abetting theory off the table and focus just on conspiracy, the jury found him guilty on a separate theory of conspiracy to commit murder for the purposes of financial gain and insurance fraud. So even if we're just looking at conspiracy, the jury found that he was involved in this conspiracy to commit these murders. And a conspiracy, the way that the instructions go, you don't have to be the actual murderer. As I said, the conspiracy was to commit insurance fraud. Murder for the purposes of insurance fraud. Financial gain by insurance fraud. So in sum, I understand the court's frustration with what you find frustration with. My position is, we stated in our briefs, is that the state court... I understand that the state court recently concluded that there was sufficient evidence of his guilt as an aider and abetter in this case, and therefore his judgment should be affirmed. And nothing... And I can't... So under the standard of reasonable, there could be no reasonable jurist. Jurists can differ on things. Correct. So we would have to find that basically all eight are unreasonable? Yes. And again, I would point out that with regard to this reference hearing, there's nothing that came out of the reference hearing, although the referee found that Calvin Boyd was not credible, that he was probably the one who actually stabbed these victims, that defense counsel was ineffective for failing to present this evidence or to investigate Boyd more thoroughly, nothing came out of that reference hearing that discredited Colette Mitchell's testimony or contradicted her testimony of petitioner's involvement in this case as a co-conspirator, as an aider and abetter. Thank you. Thank you. I have a few points I'd like to make, probably too many for the time remaining, but I'll do my best. Well, go ahead. This is a very important case. Okay. We want to hear what you have to say. Thank you. I want first to correct some of the factually erroneous statements that opposing counsel made. First, that the prosecutor argued aiding and abetting specifically with respect to Mr. Hardy. That simply is not true. In the prosecutor's closing argument, there were exactly two references that could even be discussed to aiding and abetting. One was that each of these three defendants is guilty either as the perpetrator, as a conspirator, or as an aider and abetter. That's one reference. That is not a specific reference to Mr. Hardy. Did the prosecutor go through what the overt acts were? He discussed the overt acts throughout his argument. You have to. I mean, because the conspiracy requires overt acts, right, as they were instructed. And so, just to finish briefly on the aiding and abetting, and I also want to explain why the prosecutor didn't raise a freestanding, pure conspiracy theory of liability. The other reference to aiding and abetting is that the prosecutor said Mr. Hardy could have been charged as an aider and abetter to solicitation, but we didn't charge him as that. That has nothing to do with aiding and abetting liability for murder. And the prosecutor never explained how Mr. Hardy aided and abetted the murder. He never argued that he did. And the fact that the jury was instructed as to aiding and abetting was because all three of these defendants were being tried together. And for two of them, the prosecutor spent pages of transcript explaining how they aided and abetted these crimes. With respect to conspiracy, Mr. Hardy was convicted of conspiracy, and the prosecution's was that Mr. Hardy agreed to, and then did, kill these victims. We simply do not know what the jury would have done, had it ever been asked, to consider whether Mr. Hardy was liable simply as a conspirator. It was announced to do that, and it didn't do that. The jury convicted Mr. Hardy as the actual killer. With respect to the argument that nothing in the new evidence undermined Colette Mitchell's that isn't the case. Colette Mitchell strongly suggested throughout her testimony, which was inconsistent, that perhaps Mr. Hardy had been there the night of the murders. We know now that Calvin Boyd and Marcus left the Vaux Street Apartments the night of the murders, that Calvin Boyd and Marcus went through the house, that Riley left alone the night of the murders. We know that Mr. Hardy did not leave. That undermines Colette Mitchell's suggestion that he was there. Several of the pieces of evidence upon which the warden How do we get to weigh her credibility again? Since all of that's been before the state court and the district court. So how do we get to weigh that credibility? We don't re-weigh it, and I think Well, but you're asking us to. Well, I'm not, Your Honor. And one of the things that I think Your Honor said was, credibility doesn't matter for Strickland. And it's not a re-weighing, but credibility does matter. Because if a witness has serious credibility problems, it makes the reasonable likelihood of a different result more likely. And it changes that balance with respect to Strickland prejudice. And so we do look at the weight of the testimony. We don't re-weigh it, but we do look at it. And in this case, this is not a witness who would have been, or as Judge Bastian pointed out, was believed. And jurors said we didn't believe her. We convicted Mr. Hardy because of Calvin Boyd's testimony. I would agree with you that we evaluate the strength of the evidence, but I would not agree with you that we re-weigh the credibility that's been determined by jurors. I agree that we don't re-weigh the credibility. We evaluate these witnesses as they appeared, including their credibility problems. I want to just point to some of the facts that the warden consistently brings up as this compelling evidence that Mr. Hardy was involved, because it's not as simple as the warden would have you believe. With respect to the bolt cutters, for example, there's strong evidence at trial that Mark Riley went out and bought the bolt cutters. Debbie Sportsman said she instructed him to do so. She told him he had to cut the bolt. He showed these bolt cutters to Calvin Boyd. When Collette Mitchell first testified about them at the preliminary hearing, she said, I heard about the bolt cutters from either Mr. Hardy or Mr. Riley. It was only at the time of trial that she said, Mr. Hardy told me that he used these bolt cutters. The jury knew about the prior testimony. The jury heard the other testimony. This is not a fact that's compelling, overwhelming evidence of involvement. The jury would have looked at this and said, I'm not sure that she really heard him say that. He didn't say that he would commit these crimes, as counsel said, for the purposes of collecting insurance money. She testified only that he told her beforehand he was supposed to steal something so that someone could collect insurance money on it. With respect to the rifle, I think there's a misconception that perhaps the state court had that this rifle was stolen during the crime. But the testimony at trial was clear that this rifle was given to Mark Riley as partial payment for his participation as a middleman before he ever contacted Mark Costello or sought to find another perpetrator for these crimes. And the fact that Mr. Hardy may or may not have tried to help get rid of the evidence afterwards doesn't make him a conspirator or an aider-in-a-butter before the crimes. I think the last thing that I really want to emphasize is that this is a very troubling case. This is an individual who's spent more than 30 years on death row for a crime for stabbing two people, including a child, when there's no dispute now that he didn't do it. And I think that if the state wants to keep him imprisoned on a theory of liability that wasn't urged at trial, it needs to retry him. And this court, even under AEDPA, is empowered to correct this injustice and to grant habeas relief. Thank you. Thank you.
judges: Bastian, Pregerson, Callahan